United States District Court
Northern District of California

1

2

3

4

5          **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
6

7    **ANDREW E. ROTH,**                              Case No.: 21-CV-4288-YGR

8               **Plaintiff,**                         **ORDER GRANTING IN PART AND DENYING IN**
                                                       **PART MOTION TO DISMISS**
9          **v.**

10

11   **FORIS VENTURES, LLC, VALLEJO**
     **VENTURES TRUST U/T/A 2/12/96, L. JOHN**
     **DOERR, ANN DOERR, AND BARBARA HAGER.**
12                                                     Dkt. No. 30

13              **Defendants.**

14

15         Plaintiff Andrew Roth brings this action under Section 16(b) of the Securities Exchange Act

16   of 1934 ("Exchange Act") against defendants Foris Ventures, LLC ("Foris"), Vallejo Ventures

17   Trust ("VVT"), John Doerr ("J. Doerr"), Ann Doerr ("A. Doerr") and Barbara Hager ("Hager")

18   (collectively, "defendants") seeking disgorgement of alleged short-swing profits realized by

19   defendants in connection with defendant Foris' alleged purchases and sales of Amyris, Inc.'s

20   common stock. (Dkt. No. 1, Complaint ("Compl."), ¶¶ 1-5.) Plaintiff brings this action on behalf of

21   nominal defendant Amyris.

22         Having considered the briefing and the pleadings in this case, as well as oral argument from

23   counsel on June 7, 2022, the Court **GRANTS** the motion with respect to defendant Hager and

24   **DENIES** the motion with respect to the remaining defendants.[1]  Much of defendants' motion hinges

25         _____

26         [1] The parties present several documents in support of their respective briefing. *See* Dkt.
     Nos. 31 and 37. Neither side opposes the other side's request. The Court may take judicial notice of
     the documents, many of which are public SEC filings. *See Metzler Inv. GMBH v. Corinthian*
27   *Colleges, Inc.*, 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (explaining that it was proper for the district

on the ultimate resolution of certain facts which, at this juncture, is procedurally premature.

## I.   BACKGROUND

### A.   The Parties

Plaintiff Roth owns Amyris common stock. (Compl. ¶ 2.) Nominal defendant Amyris is a Delaware corporation with an office in Emeryville, California. (*Id*. ¶ 6.) Amyris' stock trades on the Nasdaq Capital Market Exchange under the symbol AMRS. (*Id*.) Defendant Foris is a private investment Delaware limited liability company (*Id*. ¶ 3.) Defendant VVT is a member of Foris. (*Id*. ¶ 4.) Defendant J. Doerr and A. Doerr are the trustees of VVT, and defendant Hager is the special trustee of VVT and the manager of FV. (*Id*.) J. Doerr has been a member of the board of directors of Amyris since 2006 and indirectly owns all the membership interest in FV.  (*Id*. ¶ 5.) All defendants are statutory insiders because at all relevant times they were greater than 10% beneficial owners of Amyris common stock. (*Id*. ¶ 10.)

### B.   Defendants' Alleged Short-Swing Transactions

Plaintiff challenges four transactions between Foris and Amyris spanning from April 2019 to January 2020 (collectively, the "challenged transactions").

#### 1.   The April 2019 Transaction

On April 15, 2019, Foris purchased: (i) 6,732,369 shares of Amyris common stock at the purchase price of $2.87 per share; and (ii) warrants at the purchase price of $0.125 per warrant to purchase 5,424,804 shares of common stock at an exercise price of $2.87 per share for a two-year term. (*Id*. ¶ 14.) The total purchase price for the common stock and warrants was $20 million. (*Id*.)

#### 2.   The July 2019 Transaction

On July 10, 2019, FV and Amyris entered into an agreement to amend an older warrant from August 17, 2018. (*Id*. ¶ 16; Defendants' ("Defs'") Request for Judicial Notice ("RJN") Ex. C, Form 8-K Report.) The August 17, 2018 warrant that Amyris issued to Foris gave Foris the right to purchase 4,877,386 shares of common stock at an exercise price of $7.52 per share with an exercise

court to take notice of defendant's SEC filings). The Court also incorporates by reference the parties' remaining documents, as they form the basis of plaintiff's complaint.

United States District Court
Northern District of California

1    term of 21 months from issue. (*Id*. ¶ 16; Defs' RJN Ex. C.) On July 10, 2019, Amyris and Foris

2    amended the August 17, 2018 warrant to lower the exercise price from $7.52 per share to $2.87 per

3    share. (*Id*. ¶ 16; Defs' RJN Ex. C) ("July Amendment"). According to plaintiff, this amendment

4    constituted a cancellation of the August 2018 warrant and a re-grant of a new warrant, with the

5    cancellation representing a disposition or sale of the original warrant at a deemed sale price of

6    $3.21 per share (representing the stock's closing price on July 10, 2019). (*Id*.)

7              **3.    The August 2019 Transaction**

8              On August 28, 2019, again, in connection with a separate, but related, credit agreement,

9    Foris and Amyris agreed to amend two other previously issued warrants. (*Id*. ¶ 17; Defs' RJN Exs.

10   G-H.) Under the terms of the original warrants, Foris had the right to purchase up to 3,983,230

11   shares and 352,638 shares of Amyris stock at a price of $5.12 and $4.56 per share, respectively. (*Id*.

12   ¶ 17; Defs' RJN Exs. G-H.) Under the amended terms of the warrants, the purchase price of the

13   stock was reduced to $3.90. (*Id*.) The complaint alleges, these amendments constituted a

14   cancellation of the previous warrants and a re-grant of a new warrant, with the cancellation

15   representing a disposition or sale of the original warrant at a deemed sale price of $3.67 per share

16   (representing the stock's closing price on August 28, 2019) (*Id*. ¶ 17) ("August Amendments").

17             **4.    The January 2020 Warrant Amendments**

18             On January 31, 2020, Foris and Amyris entered into yet another agreement, wherein the

19   parties amended four pre-existing warrants to lower their exercise prices. (*Id*. ¶ 18.) The

20   amendments gave Foris the right to purchase: (i) 3,983,230 shares to lower the exercise from $3.90

21   to $2.87 per share; (ii) 1,000,000 shares to lower the exercise price from $3.87 to $2.87 per share;

22   (iii) 4,871,795 shares to lower the exercise price from $3.87 per share to $2.87 per share; and (iv)

23   352,638 shares to lower the exercise price from $3.90 per share to $2.87 per share. (*Id*.; "January

24   Amendments.") According to plaintiff, these amendments constituted a cancellation of the previous

25   warrants and a re-grant of new warrants, with the cancellation representing a disposition or sale of

26   the original warrant at a deemed sale price of $2.56 per share (representing the stock's closing price

27   on January 31, 2020). (*Id*.)

3

United States District Court
Northern District of California

1  **II.    LEGAL STANDARD**

2      **A.  Motion to Dismiss**

3          Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to

4  state a claim upon which relief may be granted.  Dismissal for failure to state a claim under Rule

5  12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts

6  alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th

7  Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). For

8  purposes of ruling on Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the

9  complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

10  party."  *Manzarek v. St. Paul Fire & Marine Ins.Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The

11  Court, however, need not accept as true allegations contradicted by judicially noticeable facts.

12  *See Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000).

13      **B.  Liability Under Section 16(b) of the Exchange Act**

14          Section 16(b) of the Exchange Act bars corporate insiders, such as directors and statutory

15  insiders, those owning at least 10% of the stock's shares, from profiting on short-swing trades.

16  *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 945 (9th Cir. 2006). A short-swing trade is defined as the

17  purchase and subsequent sale of stock within a six-month period. *Id*.  Section 16(b) reads in

18  relevant part:

19          For the purpose of preventing the unfair use of information which
          may have been obtained by [a] beneficial owner, director, or officer
20          by reason of his relationship to the issuer, any profit realized by him
          from any purchase and sale, or any sale and purchase, of any equity
21          security of such issuer . . . involving any such equity security within
          any period of less than six months . . . shall inure to and be
22          recoverable by the issuer, irrespective of any intention on the part of
          such beneficial owner, director, or officer in entering into such
23          transaction.

24  15 U.S.C. § 78p(b).

25          In enacting Section 16(b), "Congress recognized that insiders may have access to

26  information about their corporations not available to the rest of the investing public," and it "sought

27

1   to curb the evils of insider trading by taking the profits out of a class of transactions in which the

2   possibility of abuse was believed to be intolerably great." *Dreiling,* 458 F.3d at 947. Section 16(b)

3   is a strict liability rule that requires a defined short-swing trader to disgorge all of the profit realized

4   within a six-month time period, without proof of actual abuse of insider information, and without

5   proof of intent to profit on the basis of such information." *Roth v. Reyes*, 567 F.3d 1077, 1079 (9th

6   Cir. 2009) (internal quotation marks and citation omitted). "An action under § 16(b) to recoup

7   short-swing trading profits may be brought by the issuer whose stock was traded or by a

8   stockholder '[o]n behalf of the issuer.'" *Id.* (*quoting* 15 U.S.C. § 78p(b)).

9          A plaintiff must plausibly plead four elements to state a claim under Section 16(b): "(1) a

10  purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder

11  who owns more than ten percent of any one class of the issuer's securities (4) within a six-month

12  period." *Strom v. U.S*., 641 F.3d 1051, 1060 (9th Cir. 2011).

13  **III.   ANALYSIS**

14          Defendants argue that plaintiff's complaint should be dismissed because: (1) the challenged

15  transactions do not constitute sales or purchases within the meaning of the Exchange Act; (2) two

16  regulatory exemptions apply[2] that forecloses liability; (3) the challenged transactions did not create

17  the opportunity for speculative abuse and thus fall outside the scope of the Exchange Act; and (4)

18  plaintiff failed to state a claim against defendants Ann Doerr and Barbara Hager because plaintiff

19  failed to allege facts demonstrating a pecuniary interest by these defendants. The Court addresses

20  each argument in turn.

21  **A.  Whether the Challenged Transactions Constitute Purchases and Sales**

22          Defendants argue that plaintiff fails to plead a viable Section 16(b) claim because the

23

24          [2] As explained in more detail below, defendants argue that the challenged transactions are exempt from liability under Securities Exchange Commission ("SEC") Rule 16b-3 because the transactions were, according to defendants, approved by Amyris' board of directors and/or ratified

25  by a vote of Amyris' stockholders. Defendants also argue that the challenged transactions are exempted from liability under SEC Rule 16b-6(d) because no value was received for the deemed

26  sale of the securities.

27

United States District Court
Northern District of California

1    challenged transactions do not constitute "sales" or "purchases" under Section 16(b).  The

2    Exchange Act broadly defines a purchase as "any contract to buy, purchase, or otherwise acquire,"

3    and the term sale is defined as "any contract to sell or otherwise dispose of." 15 U.S.C. § 78c (13)

4    and (14). SEC Rule 16b-6(a) provides as follows: A purchase is also defined as "[t]he

5    establishment of or increase in a call equivalent position," which "shall be deemed a purchase of

6    the underlying security for purposes of section 16(b) of the Act." 17 C.F.R. § 240.16b–6(a). A sale

7    is defined as the "liquidation of or decrease in a call equivalent position," which is "deemed a sale

8    of the underlying securities for purposes of section 16(b) of the Act." *Id.*

9           SEC Rule 16a-1(b) defines the term "call equivalent position" as "a derivative security

10   position that increases in value as the value of the underlying equity increases." 17 C.F.R. §

11   240.16a-1(b). Rule 16a-1(c) generally defines the term "derivative securities" as "any option,

12   warrant, convertible security, stock appreciation right or similar right with an exercise or

13   conversion privilege at a price related to an equity security, or similar securities with a value

14   derived from the value of an equity security." 17 C.F.R. § 240.16a-1(c). Thus, Section 16(b)

15   "applies to 'acquisitions and dispositions of equity securities in transactions such as conversions,

16   options, stock warrants, and reclassifications." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684

17   F.3d 36, 43 (2d Cir. 2012) (citations omitted); *see also Alpha Venture Capital Partners LP v.*

18   *Pourhassan*, 30 F.4th 920 n.2, 3 (9th Cir. 2022) (explaining that the acquisition of a warrant is

19   deemed to be equivalent to the acquisition of the underlying security for purposes of Section 16(b)).

20          Further, amendments to an existing derivative security, if sufficiently material, may be

21   considered simultaneous purchases and sales for purposes of Section 16(b). The SEC Rules state

22   that a material amendment to a derivative security is "deemed to be a redemption of [the] old

23   security and grant of a new security for purposes of Section 16." *Analytical Surveys,* 684 F.3d at 47

24   n. 17 (*quoting* Ownership Reports and Trading by Officers, Directors and Principal Security

25   Holders, Exchange Act Release No. 29,131, 1991 WL 292345, at *4 n. 35 (April 26, 1991)). An

26   amendment that changes the purchase price of the underlying share is a material change and may be

27   considered a cancellation and/or regrant. *See Ware v. Freidenrich SEC No Action Letter*, 1992 SEC

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1   No-Act. LEXIS 25 (Jan. 10, 1992); Dkt. No. 38-12, Ostrager Decl. Ex. 12, at Question 8, American

2   Bar Association, Technical Session Between the SEC Staff and the Joint Committee on Employee

3   Benefits Questions and Answers, May 1998; *see also Sun River Energy, Inc. v. McMillan*, No. 13-

4   cv-2456, 2014 WL 4771852, at *12 (N.D. Tx., Sept. 25, 2014) (amendment to reduce exercise price

5   was a material amendment to a derivative security deemed to be a redemption of the old security

6   and grant of a new security, and the redemption is a "disposition" that "constitutes a sale for

7   purposes of § 16(b)"); Peter J. Romeo & Alan L. Dye, Section 16 Treatise and Reporting Guide §

8   3.03 at 315 (5th ed. 2019) (explaining that "changing the terms of an outstanding option or other

9   derivative security . . . may be deemed so significant that it effectively result in the grant of a new

10  security and a cancellation of the old security for purposes of Section 16. A deemed cancellation

11  and regrant . . . may constitute a sale, a purchase, or both for purposes of Section 16(b).") Here, the

12  complaint alleges that Foris engaged in several transactions that constituted purchases under

13  Section 16(b). For instance, the complaint alleges that, on April 15, 2019, Foris purchased

14  6,732,369 shares at a purchase price of $2.87 and warrants to purchase 5,424,804 shares of

15  common stock at the price of $0.125 per warrant with an exercise price of $2.87 per share. (Compl.

16  ¶ 15). The Court finds these allegations sufficient to identify transactions which constitute

17  purchases under Section 16(b).

18      The complaint also alleges that Foris and Amyris entered into transactions that materially

19  amended preexisting warrants and thus constituted simultaneous purchases and sales under Section

20  16(b). Plaintiff argues that the July, August, and January Amendments constituted "material

21  amendments" to preexisting warrants that Foris and Amyris previously entered into, and that each

22  material amendment is a cancellation of the pre-existing warrant and the simultaneous re-grant of a

23  new warrant with reduced purchase price. (*See* Compl. ¶¶ 16-18.) Specifically, plaintiff argues that

24  the cancellation of the pre-existing warrants caused the number of shares covered under those

25  warrants to drop to zero, thereby constituting a sale under Section 16(b). In the same vein,

26  according to plaintiff, the re-grant of the new warrants caused the number of shares to increase

27  from zero to the number of shares covered under the new warrants, thereby constituting a purchase

United States District Court
Northern District of California

1    under the Act. Because the July, August, and January Amendments reduced Foris' purchase price

2    of the underlying shares in the preexisting warrants, the Court finds that, at this stage, the liberal

3    definitions of "sale" and "purchase" that has been given under Section 16(b) satisfy a finding that

4    plaintiff has plausibly alleged that the challenged transactions constitute "purchases" and "sales"

5    under the Exchange Act. *See Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582,

6    593-94 (1973) ("[t]he statutory definitions of 'purchase' and 'sale' are broad, and, at least arguably,

7    reach many transactions not ordinarily deemed a sale or purchase.")

8           The motion on this ground is **DENIED**.

9    **B.   Whether the Challenged Transactions Fall Under an Exemption**

10          Having found that the challenged transactions may constitute "purchases" and "sales," the

11   Court next considers defendants' arguments that the alleged transactions are covered by two

12   regulatory exemptions under the Exchange Act as a matter of law.

13          Section 16(b) contains express exemptions. Importantly, for the purposes of this motion,

14   Section 16(b) "shall not be construed to cover any transaction or transactions which the Securities

15   and Exchange Commission by rules and regulations may exempt as not comprehended within the

16   purpose of this subsection." *Roth,* 567 F.3d at 1080. Pursuant to that authority, the SEC has

17   promulgated Rule 16b-3(a), which exempts from Section 16(b) liability "a transaction between the

18   issuer . . . and an officer or director of the issuer that involves issuer equity securities" assuming

19   certain prerequisite conditions are met.

20          Under Rule 16b-3(d), one such prerequisite condition is met where the transaction "is

21   specifically approved by the issuer's board of directors or majority of shareholders." *Dreiling*, 458

22   F.3d at 945 (*citing* 17 C.F.R. § 240.16b-3(d)). The SEC has also promulgated Rule 16b-6(d), which

23   provides that the "disposition or closing of a long derivative security position as a result of

24   cancellation or expiration is exempt from Section 16(b) where no value is received from such

25   cancellation or expiration." 17 C.F.R. § 240. 16b-6(d).

26   **1.   SEC Rule 16b-3(d) Exemption Based on Board of Director's Approval**

27          Defendants argue that plaintiff's Section 16(b) claim should be dismissed because the

1    challenged transactions are exempted under SEC Rule 16b-3(d) given that they were approved by

2    Amyris' board of directors and a majority of the shareholders. In opposition, plaintiff argues that

3    this exemption does not apply because the challenged transactions were not between Amyris and

4    "an officer or director" but rather with Foris who is neither. The plain language of SEC Rule 16b-3

5    states that the exemption applies to "transaction[s] between the issuer . . . and an officer or director

6    of the issuer." 17 C.F.R. § 240.16b-3(a). Here, the current factual record and the judicially noticed

7    documents suggest only that Foris is an entity affiliated with a director (J. Doerr) and that J. Doerr

8    "indirectly owns all of the membership interest in Foris." (Dkt. No. 32-10, Collins Declaration

9    ("Decl."), Ex. J at 38; Ex. L at 13.) There is nothing in the record before the Court that suggests that

10   Foris itself is a director or officer of Amyris.

11           Notwithstanding that, defendants argue that SEC Rule 16b-3(d) still applies to the

12   challenged transactions because the rule extends to "transactions in which an officer or director has

13   an indirect pecuniary interest." (Dkt. No. 39, Reply at 3.) Defendants rely on *Am. Bar Ass'n*, 1999

14   WL 61837, at *2 (S.E.C. No-Action Letter Feb. 10, 1999) for this proposition. While the SEC No-

15   Action Letter does extend SEC Rule 16b-3(d)'s reach to cover transactions in which directors or

16   officers have an indirect pecuniary interest, defendants ignore the express requirements for

17   application of this rule. The following must be met to satisfy Rule 16b-3: (1) the approving entity

18   must know and (2) the document evidencing the approval must specify the existence and extent of

19   the officer's or director's indirect interest in the transaction (3) and that the approval is granted for

20   purposes of making the transaction exempt under Rule 16b-3.[3]

21           Here, the SEC documents before the Court satisfy the first two requirements set forth above

22   but not the third. For instance, the Schedule 14A Proxy Statement filed by Amyris with the SEC on

23   October 10, 2019 notes that the board and shareholders were informed that the transaction was

24   between Foris and Amyris and that director John Doerr "indirectly owns all of the membership

25   interest in Foris." (Collins Decl., Ex. J at 38.) However, nothing in that document, or any of the

26   ───────────────────

27   [3] The same is required for exemptions under SEC Rule 16b-3(e), which defendants only
     summarily cite in footnote 8 of their opening brief.

United States District Court
Northern District of California

1   other judicially noticed documents, suggest that the board of directors approved the transactions for

2   the purposes of making them exempt under Rule 16-3. Thus, on the current factual record and the

3   judicially noticed documents before the Court, the Court cannot hold that the approved transactions

4   are exempted under Rule 16b-3(d).

5           Lastly, defendants also argue that the "director by deputization" doctrine applies and thus

6   the transactions fall under the exemption.[4] Since directors by deputization are subject to Section

7   16(b) liability," the Ninth Circuit has held that "they may also seek protection of Rule 16b-3(d)."

8   *Dreiling*, 458 F.3d at 953. However, for the exemption to apply, a "director by deputization must

9   fulfill the same requirements of Rule 16b-3(d) to receive its protection." *Id*. at 954.  Further, board

10   members of the issuer's board must "know when another person serving on the same board is

11   deputized by another person or entity to carry out its interests." *Id*. The exemption does not apply if

12   the entity involved in the transaction is an undisclosed or secret director by deputization. *Id*. Thus,

13   whether a company is a director by deputization is "a question of fact to be settled case by case and

14   not a conclusion of law." *Id*. at 952 (reversing and remanding district court's dismissal of

15   complaint); *see also Strom*, 641 F.3d at 1060 ("the applicability of § 16(b) often will turn on factual

16   issues not appropriately resolved on a motion to dismiss—for example, whether the transactions

17   were approved by the issuer's board of directors and so exempt from § 16(b).")

18           Neither the allegations in the complaint, nor those documents of which judicial notice has

19   been taken, suffice to find as a matter of law that Foris and VVT are directors by deputization.

20   Specifically, the Court cannot determine whether J. Doerr was in fact deputized by Foris and VVT,

21   either expressly or impliedly, and if so, whether the board was aware of the deputization when

22   approving the transactions. *Id*. at 945 ("whether the TRS executive was director by

23   deputization and whether the InfoSpace board was knowledgeable as to that relationship are

24   questions of fact that defeat dismissal under Federal Rule of Civil Procedure 12(b)(6).") Whether

25
26        [4]  A director by deputization is a corporation that deputizes a natural person to perform its
duties and responsibilities on a corporation's board. *Dreiling*, 458 F.3d at 952.

27

10

United States District Court
Northern District of California

1 the exemption applies requires resolution of these issues which cannot be done in this procedural

2 context.

3      In sum, given the factual record before the Court, including the judicially noticed

4 documents, the Court cannot hold at this stage that the transactions are exempted under SEC Rule

5 16b-3(d). Accordingly, the motion on this ground is **DENIED**.

6      **2. SEC Rule 16b-6(d) Exemption Based on No Value Received From Cancellation**

7      Next, defendants argue that dismissal is warranted because the challenged transactions are

8 exempted under Rule 16b-6(d) because the "cancellations" of the warrants were not for value.

9 Under SEC Rule 16b-6(d), "the disposition or closing of a long derivative security position, as a

10 result of cancellation or expiration, shall be exempt from section 16(b) of the Act where no value is

11 received from the cancellation or expiration." 17 C.F.R. § 240. 16b-6(d).

12      Here, the parties dispute whether Foris received value for the warrant amendments.

13 Defendants argue that the nature of the transactions makes it such that Foris received no value in

14 exchange for the cancellations. However, the complaint alleges that the amended warrants reduced

15 the purchase price of millions of shares which resulted in at least $6,471,124 in profits. (Compl. ¶¶

16 16-19.) Indeed, plaintiff argues that Foris received value equivalent to the worth of the new

17 amended warrants which, according to plaintiff, is more than $22 million in savings. (Dkt. No. 36,

18 Opposition ("Opp.") at 16.)  The Court is unable to decide, as a matter of law, whether Foris

19 received value in exchange for the cancellation of the pre-existing warrants. Thus, the Court finds

20 that the issue of whether value was received is also a factual issue not to be decided at this posture.

21 The motion on this ground is **DENIED**.

22      **C. Whether the Transactions are Subject to Speculative Abuse**

23      Defendants also argue that the complaint should be dismissed because the warrant

24 amendments fall outside the scope of Section 16(b). The Supreme Court held in *Kern County Land*

25 *Co.*, that in cases involving "unorthodox" types of transactions, those that do not necessarily

26 involve the exchange of cash for stocks, courts should look to the purpose of the statute as an aid

27 for interpreting the statute. *Kern*, 411 U.S. at 593. That purpose is to protect the "the public 'by

United States District Court
Northern District of California

1   preventing [corporate insiders] from speculating in the stock on the basis on information not

2   available to others.'" *Id.* at 592. In deciding whether challenged transactions fall within the scope

3   of Section 16(b), courts "have come to inquire whether the transaction may serve as a vehicle for

4   the evil which Congress sought to prevent—the realization of short-swing profits based on access

5   to inside information." *Id*. at 594.

6           To fall within Section 16(b)'s scope, "it is not necessary that the plaintiff prove actual

7   [speculative] abuse; the transaction must be subjected to scrutiny if there is a potential [of

8   speculative abuse]." *Provident Securities Co. v. Foremost-McKesson, Inc*., 506 F.2d 601, 605 (9th

9   Cir. 1974) (citations omitted). In determining whether the challenged transaction has the potential

10  of speculative abuse, the Ninth Circuit considers whether (1) the defendant had access to insider

11  information; and (2) the transaction was initiated voluntarily. *See id*. (*citing Kern*, 411 U.S. at 596-

12  600). "Absent a showing of involuntariness, we would not be justified in applying the *Kern*

13  *County* rule." *Id.* at 606; *C.R.A. Realty Corp. v. Fremont General Corp.*, 5 F.3d 1341, 1343 (9th

14  Cir. 1993) (finding that *Kern County* has no application where there was nothing involuntary about

15  either the sale or the purchase).

16          Here, defendants rely on *Kern* to argue that plaintiff's case should be dismissed because the

17  facts of this case do not present an "opportunity for speculative abuse." Defendants' argument does

18  not persuade. The *Kern rule* applies where there is a showing of involuntariness. Here, defendants

19  do not dispute that Foris voluntarily entered into the challenged transactions with Amyris. Nothing

20  in the complaint, or the parties' briefing, suggest that these transactions were involuntary. Indeed,

21  in their motion to dismiss, defendants state that Foris and Amyris agreed to enter into the

22  challenged transactions as part of a credit agreement. (*See* Dkt. 30, Motion ("Mot.") at 5-7.)

23          Defendants' argument that the challenged transactions do not give rise to the potential for

24  speculative abuse because defendants did not have the opportunity to manipulate the transactions

25  for their benefit is also unpersuasive. (*See* Mot. at 17.) Such opportunity to manipulate the

26  transactions is not necessary; instead, Section 16(b) applies where there is a "potential of

27  speculative abuse." Here, the allegations of the complaint provide sufficient grounds to argue that a

United States District Court
Northern District of California

1  potential for speculative abuse existed. The parties do not dispute defendants' positions as insiders.

2  As an insider, defendants had access to insider information. Whether defendants actually used that

3  information to its their advantage is not relevant for Section 16(b) purposes. *See Dreiling*, 458 F.3d

4  at 947 (explaining that liability under Section 16(b) still attaches "without proof of actual abuse of

5  insider information, and without proof of intent to profit on the basis of such information.") Here,

6  the relevant fact is that defendants are insiders and had access to insider information. Defendants do

7  not argue otherwise.

8       Defendants' other argument that the challenged transactions did not present the opportunity

9  for speculative abuse because the transactions were "acquisitions from or dispositions to the issuer"

10  is also unpersuasive. A transaction is not automatically free of speculative abuse just because it was

11  a product of direct negotiations between an issuer. *See Analytical Surveys, Inc.,* 684 F.3d at 46

12  (rejecting the argument that a transaction should automatically be exempted from Section 16(b)

13  because it was the product of direct negotiations between a company and an insider). An

14  involuntary transaction and the lack of access to inside information is required for a finding of no

15  opportunity, or potential opportunity, for speculative abuse. The complaint alleges that Foris was

16  both an insider and that Foris voluntarily engaged in the challenged transactions. Absent allegations

17  to the contrary, the Court finds that the facts alleged in the complaint are sufficient to conclude that

18  applying Section 16(b) to the allegations in this case comports with the purpose of the Exchange

19  Act.

20       Defendants' cited authorities do not change the result. Given the procedural posture of most

21  of the cases, the Court finds the authorities unpersuasive. Indeed, all but one of the cases were

22  decided, either at summary judgment or during a bench trial, where the parties were, in theory, able

23  to present a full factual record about the nature and context of the challenged transactions. *See*

24  *Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 310 (2d Cir. 1998) (affirming district

25  court's grant of summary judgment); *Olagues v. Muncrief*, No. 17-cv-0153, at *7 (N.D. Okla. Jan.

26  1, 2018) (same); *Pay Less Drug Stores v. Jewel Companies, Inc.*, 579 F. Supp. 1396, 1401 (N.D.

27  Cal. 1984) (same); *Blau v. Lamb*, 363 F.2d 507 (2d Cir. 1966) (affirming in part and reversing in

1    part district court's bench trial order). Additionally, the only case decided at the motion to dismiss

2    stage is factually distinguishable, as that case dealt with the acquisition and disposition of put and

3    call options that were structured so that the put options expired immediately if the corresponding

4    call options were exercised. *See Olagues v. Icahn*, No. 15-cv-0898, 2016 WL 1178777, at * 3 (S.D.

5    N.Y. Mar. 23, 2016). Such facts are not present here.

6           In sum, viewing the allegations in favor of plaintiff, as the Court must at this stage, the

7    Court finds that the alleged transactions plausibly fall within the scope of Section 16(b).

8    Defendants' motion on this ground is also **DENIED.**

9           **D.   Whether Plaintiff's Claims Against Defendants A. Doerr and Hager Fail**

10          Lastly, defendants argue that plaintiff's claims against defendants A. Doerr and Hager

11   should be dismissed because plaintiff failed to allege facts demonstrating that the defendants have a

12   pecuniary interest in any of Foris' profits. Liability under Section 16(b) requires a showing of both

13   beneficial ownership of more than 10% of a class of equity securities and a "pecuniary interest" in

14   the securities at issue.  *See* Securities Exchange Act of 1934; 15 U.S.C.S. § 78p(b). The term

15   "pecuniary interest" is defined as "the opportunity, directly or indirectly, to profit or share in any

16   profit derived from a transaction in the securities." 17 C.F.R. **§** 240.16a–1(a)(2)(i).

17          With respect to A. Doerr, defendants' argument fails. Under SEC Rule 16a-8, 17 C.F.R.

18   240.16a-8, A. Doerr has an indirect pecuniary through her husband, J. Doerr. *See* 17 C.F.R. §

19   240.16a-8(b)(2) ("trustees shall be deemed to have a pecuniary interest in the trust holdings . . . [if]

20   at least one beneficiary of the trust is a member of the trustee's immediate family."); 17 C.F.R. §

21   240.16a-1(e) (the term "immediate family" includes a spouse).  The parties do not dispute that J.

22   Doerr indirectly owns all membership interest in Foris and is thereby a beneficiary of the trust.

23   However, with respect to defendant Hager, the complaint does not sufficiently allege that Hager has

24   a pecuniary interest in the securities at issue, or that Hager profited from such transactions. Absent

25   such allegations, plaintiff's claim against Hager fails.

26          During oral argument, plaintiff indicated that he could amend the complaint to sue Hager in

27   her capacity as a trustee rather than in her personal capacity as a purported insider and noted that

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1 | such course of action may be necessary given Hager's role as the trustee. The parties dispute

2 | whether amendment to sue Hager as trustee is necessary given that the trust is also named as a

3 | defendant. The Court understands that plaintiff does not intend to file an amended complaint to add

4 | Hager but reserves the right to subpoena Hager for testimony.

5 |      Accordingly, the motion on this ground is **GRANTED** with respect to Hager and **DENIED**

6 | with respect to A. Doerr.

7 | **IV.**    **CONCLUSION**

8 |      For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** defendants'

9 | motion to dismiss. The motion is **GRANTED** with respect to defendant Hager for failure to

10 | sufficiently allege facts demonstrating a pecuniary interest by Hager.

11 |      With respect to defendants Foris, VVT, J. Doerr, and A. Doerr, the motion to dismiss is

12 | **DENIED**.  Defendants shall file an answer to plaintiff's complaint within fourteen (14) days from

13 | the date of this order.

14 |      The clerk of the court shall set a case management conference on July 25, 2022 at 2:00 p.m.

15 | to be held on the Zoom platform.

16 |      This order terminates Docket Number 30.

17 |   **IT IS SO ORDERED**.

18 | Date: June 13, 2022

19 |

20 |                       **YVONNE GONZALEZ ROGERS**
                     **UNITED STATES DISTRICT COURT JUDGE**